# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**KENNETH D. OWENS**                                                                                     **PLAINTIFF**

**V.**                                 **CASE NO. 5:13CV00295-DPM-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                                    **DEFENDANT**

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for United States District Judge D. P. Marshall Jr. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Report and Recommendation**

Plaintiff Kenneth Owens appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  For reasons set out below, the decision of the Commissioner should be AFFIRMED.

I.      **Background**

On January 21, 2010, Mr. Owens protectively filed for DIB and SSI benefits due to headaches, back pain, neck pain, heart attacks, high blood pressure, difficulty breathing, swelling in his feet and legs, restless leg syndrome, and anxiety.  (Tr. 168, 189, 209)  Mr. Owens's claims were denied initially and upon reconsideration.  At Mr. Owens's request, an Administrative Law Judge ("ALJ") held a hearing on November 1, 2011, where Mr. Owens appeared with his lawyer.  (Tr. 32)  At the hearing, the ALJ heard testimony from Mr. Owens, Jessica Owens (his wife), and a vocational expert ("VE").  (Tr. 33-90)

The ALJ issued a decision on March 26, 2012, finding that Mr. Owens was not disabled under the Act.  (Tr. 17-25)  On July 25, 2013, the Appeals Council denied Mr. Owens's request for review, making the ALJ's decision the Commissioner's final decision.  (Tr. 1-3)

Mr. Owens, who was 36 years old at the time of the hearing, had a ninth-grade education and had been in special education classes.  (Tr. 37-38, 66)  He had past relevant

work as a truck driver, fork-lift operator, woodworking shop hand, and cut-out saw operator.  (Tr. 82)

## II.     Decision of the Administrative Law Judge[3]

The ALJ found that Mr. Owens had not engaged in substantial gainful activity since November 13, 2008, and that he had the following severe impairments:  coronary heart disease, status-post coronary bypass graft, status-post myocardial infarction, hypertension, chronic obstructive pulmonary disease ("COPD"), and tobacco abuse.  (Tr. 19)  The ALJ also found that Mr. Owens did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[4]  (Tr. 19)

According to the ALJ, Mr. Owens has the residual functional capacity ("RFC") to "perform less than the full range of sedentary work."  He could lift/carry ten pounds occasionally, less than the pounds frequently, stand/walk for at least two hours of an eight-hour workday, and sit for six house of an eight-hour workday.  (Tr. 20)  The VE

---

[3] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. § 416.920(a)-(g) (2005).

[4] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

3

testified that the jobs available with these limitations were table worker, lense inserter, and final assembler.  (Tr. 24, 83)

After considering the VE's testimony, the ALJ determined that Mr. Owens could perform a significant number of other jobs existing in the national economy, and thus, found that Mr. Owens was not disabled.

### III.   Analysis

####   A.   Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.  *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."  *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion."  *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. Mr. Owens's Arguments for Reversal

Mr. Owens, proceeding pro se, asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence. Specifically, he argues that the ALJ: (1) erred by discounting his testimony; and (2) improperly disregarded doctors' statements that he could not work. (Docket entry #16)

### 1. The ALJ's Credibility Finding

Mr. Owens had a stroke when he was 30 years old and a heart attack and bypass surgery in late November of 2008, when he was 32 years old. (Tr. 43, 426) He reported another heart attack in the fall of 2011, and has had breathing issues for several years. Mr. Owens argues that the ALJ erred in discounting his claims of disability and that all of his impairments have worsened since the hearing. (#16)

When assessing Mr. Owens's credibility, the ALJ properly considered the fact that Mr. Owens repeatedly failed to "follow a prescribed course of medical treatment." *Burnside v. Apfel*, 223 F.3d 840, 844 (8th Cir. 2000). Below are a few examples:

**Diet** – Mr. Owens was counseled on dietary changes as early as July of 2006. (Tr. 293) In of August of 2010, his doctor recommended a low-sodium diet, exercise, and weight loss. Mr. Owens, who was 5'7, weighed 209 pounds at the time. (Tr. 847) By August of 2011, he was up to 217 pounds, and in September he weighed 222 pounds. (Tr. 853, 857) In October 2011, Mr. Owens complained of back pain, but still weighed 217 pounds, and again, was advised to lose weight. (Tr. 861) The doctor also noted that Mr. Owens was only "partially compliant" with the recommended low sodium, low fat diet. (Tr. 865)

**Non-Compliance** –  Mr. Owens had a history of not taking his medications or following his doctors' treatment plans.  Notes from November of 2008 reflect that Mr. Owens was not taking his medications.  (Tr. 310)  In December of 2008, just weeks after his surgery, the treating doctor noted that Mr. Owens "ran out of his pills and stopped taking them on his own."  (Tr. 432)  Notes from August of 2010 and October of  2011, reveal that Mr. Owens was not doing his home blood pressure checks and was not taking his medications.  (Tr. 845, 860)   Mr. Owens was out of medication in September of 2011, and the doctor noted that Mr. Owens had not called in for refills since June of that year.  (Tr. 857)  Additionally, Dr. Qadir noted that Mr. Owens "is a high-risk patient [who] was seen by me in the past, however, he has not kept follow-up."  (Tr. 856)  In October of 2011, Dr. Qadir "again reinforced the need for [Mr. Olson's] active participation in plan of care due to his comorbidities."  (Tr. 866)

**Smoking** –  Mr. Owens smoked one-to-two packs of cigarettes a day for 24 years, but testified at the hearing that he had quit smoking a few months earlier.  (Tr. 41, 348, 461, 845)  On December 16, 2008, after his heart attack and surgery, Mr. Owens continued to smoke and was advised against it by his doctor.  (Tr. 417)  In late December, he was "advised again not to smoke ever again."  (Tr. 432)  Nearly three years later, in September of 2011, the doctor noted that Mr. Owens's COPD was worsening, but that he continued to smoke a pack of cigarettes a day, despite years of being counseled to stop.  (Tr. 856)

Smoking is an expensive, ongoing habit that can be considered when weighing Mr. Owens's credibility. Additionally, it is a habit that directly exacerbates all of Mr. Owens's medical conditions. Yet, he has continued to smoke, despite repeatedly being directed to stop by his treating doctors.

The Court also notes that the Disability Determination Form, dated April 16, 2010, indicates that Mr. Owens "used to smoke but not anymore" and that he stopped smoking in 2008. (Tr. 792) These statements are inconsistent with the rest of the record and Mr. Owens's testimony at the November 1, 2011 hearing.

**Side effects** – At the hearing, Mr. Owens testified that his medication made him drowsy. However, in August of 2010, September of 2011, and October of 2011, Mr. Owens reported no side effects from his medications. (Tr. 845, 856, 865)

In addition to the credibility assessment, the ALJ had sufficient objective evidence to support his findings. For example, an April 16, 2010 physical examination note indicates that Mr. Owens had only moderate limitations. (Tr. 796) That same month, an RFC determination concluded that Mr. Owens could occasionally lift 10 pounds and frequently lift less than 10 pounds. (Tr. 798) Mr. Owens testified that his treating physician had limited him to lifting no more than 20 pounds. (Tr. 60) Ultimately, the ALJ determined that Mr. Owens could perform sedentary work, and this is consistent with the objective medical evidence.

The ALJ also recognized that none of the treatment notes supported restrictions as extreme as Mr. Owens alleged at the administrative hearing. The ALJ found that "the

7

record reveal[ed] relatively infrequent trips to the doctor for allegedly disabling symptoms. In fact, it appears that visits were either because of specific, isolated issues (heart attacks, falling, etc), prescription refills, or follow-ups after lab work or hospital visits."

### 2. Testimony of Doctors

Mr. Owens argues that the ALJ erred by not crediting "two doctors saying [he] couldn't work." (#16)  In an October 31, 2011 letter, Dr. Qadir advised that "due to the grave nature of [Mr. Owens's] disease and the need for prompt and appropriate medical treatment [he] would greatly benefit from getting insurance coverage to ensure continuous monitoring of his chronic disease." (Tr. 852) The ALJ gave this letter little weight, because there was no analysis and no reference to objective clinical findings or narrative treatment notes to support the opinion. (Tr. 23) Notably, Dr. Qadir did not opine that Mr. Owens was unable to work. To the extent that Dr. Qadir said that Mr. Owens was unable to work, the ALJ found that the conclusion was not supported by the remainder of the record. (Tr. 23)

Also in the record is a November 5, 2012 letter signed by Dr. Don Ball on the letterhead of Freeman & Associates, PLLC, which appears to be a law firm. (Tr. 877) The form is left blank as to Mr. Owens's "work status at the present time," and Dr. Ball simply circled a "no" after the question as to whether Mr. Owens could work an eight-hour day. There are no specifics, support, or limitations mentioned. The letter has little value and is contrary to the record as a whole.

**IV.     Conclusion**

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is sufficient evidence in the record as a whole to support the Commissioner's decision.  Accordingly, the undersigned magistrate judge recommends denying Mr. Owens's request for relief (docket entry #2) and affirming the Commissioner's decision.

DATED this 24th day of June, 2014.

_____
UNITED STATES MAGISTRATE JUDGE